We'll now proceed to the next case on the calendar, Warr v. Liberatore, and we have Mr. Perkwit for the appellant. Mr. Perkwit, are you there? You're on mute. I apologize, Your Honor. That's okay. I do that myself. We have Mr. Ash for the appellate. Good morning, Your Honor. Good morning, Mr. Ash. All right, Mr. Perkwit, you're up first, and you reserve three minutes for rebuttal. Thank you, Your Honor. Charles Perkwit on behalf of appellants Benny Warr and Nina Warr. On this appeal, the plaintiff appellants are seeking a new trial on the issue of compensatory and punitive damages and also for the disqualification of Mr. Ash at any retrial in the event that a new trial is ordered. In this case, on point one, we argued that the magistrate abused her discretion in allowing the introduction of evidence about the defendant's impressions about drug and other crime problems in the area where Mr. Warr was arrested, and this created undue prejudice or passion in favor of the defendant officers, which played on the sympathy of the jury. We argued that this ruling was arbitrary and irrational, and it had absolutely no relevance to the crime for which Mr. Warr was arrested for, which was just... But the judge gave a limited instruction, didn't it? Why wasn't that limitation adequate? Well, the problem with that, Your Honor, is that the limitation was not adequate whatsoever. The judge indicated in the limiting ruling in the appendix at page 143 to 144, she said, my inclination would be to permit the defense to elicit evidence through the officers about what they knew of the association of criminal activity and drug activity in this block, but not to permit Mr. Ash to suggest that Mr. Warr was involved in that activity. The limiting instruction did not provide any use whatsoever because the damage was done. Once Mr. Ash was allowed to question these officers about the character of this neighborhood, it all became about the character of the neighborhood. Well, but Mr. Berkwit, at the stage when the judge made this ruling, wasn't there still a false arrest claim pending for trial? There was. There was. And so one issue would be whether there was probable cause, right? Right. Whether Mr. Warr was yelling obscenities. But I thought the disorderly conduct claim had to do with failure to disperse, which depends on a lawful dispersal order. Correct. Is that not correct? That's correct. Why wouldn't the officers then be entitled to put in evidence about the basis and the reasoning supporting the dispersal order? Well, Your Honor, Judge Wolford ruled on the motion for summary judgment that the first order of dispersal that Mr. Warr complied with it because he went across the street within a minute after the officers arrived. So she ruled that the second issue was the second time when they went over to the bus stop. You know, at that point is what has to be looked at. And at that point, the jury. So why isn't excuse me. So whichever dispersal order we're talking about, isn't the reason for the dispersal order relevant to the case? No, no, Your Honor. Because the officers testified, Officer Fregno testified at trial, that it was the obscenities was the basis for the arrest. Okay. So the question is, was Mr. Warr yelling obscenities or not? And the jury determined on the special interrogatories that the public harm element wasn't there. It's a failure to comply with a dispersal order. Isn't that what we're talking about under disorderly conduct? No, it's regarding yelling the obscenities, which caused the crowds to form. And during the trial, the jury determined on the special interrogatories that there was no crowds gathering before the wheelchair was pushed over. So the public harm element was totally lacking and the crowds did not. Well, that may be that may be what the jury found at the end. But the question here is what evidence would the parties be permitted to put into play in raising those issues? Exactly. It wasn't the legitimacy. I thought you already told me that the legitimacy of the dispersal order. The second dispersal order was a contested issue in the case. The question is, was it a legitimate order to disperse? The officers testified that they arrested Benny War because of him shouting obscenities. OK, so the basis of the disorderly conduct charge was yelling obscenities. And then you got to look at people be Baker to decide whether the public harm elements are there, which they weren't before the wheelchair was pushed over. So I'm going to ask you about in terms of the verdict on damages. And this also goes into your argument about the new trial that your argument is that it was the misconduct that caused the unusual verdict, I guess, on damages. But couldn't it be that my reading of the record is that I think you referenced it, that also Libertari was the one who was alleged to have pushed the wheelchair over. But there were other officers who used much more substantial force, who the jury found no liability for. Am I wrong about that? Yes. Yes. Because the evidence showed that it was Defendant Libertari who intentionally pushed the wheelchair over and that caused Mr. War's left side of his head and body to slam onto the sidewalk. And then it was a lot of other officers after that. Every every fell over the wheelchair. I thought it was allegedly a lot of force used by the other officers. Am I wrong? Officer Ferragno delivered abdominal knee strikes to Mr. War, but it was Officer Libertari who looked to the left and then the right and then delivered the downward elbow strike to Mr. War's head. Why couldn't the jury, when you have multiple officers operating together like that, determine that maybe they just found he tipped the wheelchair over and didn't do the elbow strike? We don't know which act they thought was excessive, but it could have been just turning the wheelchair over. Right. Right. Officer Libertari pushed the wheelchair over. If they found he pushed the wheelchair over, but they didn't believe that it caused any type of injury. And whatever injuries it had were caused by what the other officers did. It wouldn't be illogical for them to find liability because he shouldn't have pushed him off the wheelchair and award one dollar. Right. No, because we prove compensatory damages. Even the defense expert, the neuropsychologist, Dr. Benedict, he agreed that Mr. War suffered a concussion and post-traumatic stress disorder from this event. So the jury have concluded that was from the other. It's my whole point is that it could have been from the other officers. The cause of whatever injuries had is the jury has to determine which officers that they think caused that. They could have said it wasn't the tipping over the chair was what happened after the chair tipped over. Yeah, but Mr. War's head hit hit the sidewalk because the chair was pushed over by Officer Libertari and he suffered trauma to his head because of the elbow strike by Officer Libertari. So, well, that's your position now, but the jury has to show. That's what the evidence showed. The evidence showed that it had to be from Officer Libertari, not the other officers that had to be. Correct. As far as the concussion and the the head injury, the post-traumatic stress disorder. Correct. All right. OK, thank you. We'll hear from Mr. Ash. Good morning, your honors. May it please the court. Spencer Ash for the appellees. First off, I'd like to say that this case represents the culmination of seven years of litigation for the court's review or over 200 docket entries. I've not personally been involved in a case more heavily litigated and more meticulously scrutinized than this particular case. And I give the trial court a lot of credit for the hard work and due diligence. And quite frankly, just this is something that I should say for the record. The fact that I may have made missteps that the trial court found not definitive is something that I have some great regret about, because I do immensely respect the trial court and the work that they put into this case. Seven witnesses, expert witnesses were called. A total of 16 witnesses were presented at all times during this trial. Mr. War was positioned two feet from the jury box. Everything was put in. Everything was heard. Judge Payson was a gatekeeper. Even when Mr. Burke, which seemed oblivious to issues that may have been raised. What he has to demonstrate here in terms of abuse of discretion is the language I will quote from N. Ray Sims that Judge Payson's decisions cannot be located within a range of permissible decisions. That clearly is not here on this record. In terms of the jury's findings of fact and ultimate verdict, he would have to show, and I quote the language of United States v. Sanchez, that those evidentiary findings were patently incredible or defied physical realities. Again, those those facts are not present on this record. So unless the court has questions, my brief is pretty exhaustive. So is Judge Payson's ruling. I'll stop there. I have a question about the references to his prior incarceration. Judge Payson found that she made an M&A ruling and that it was intentionally violated. What's your response to that? Well, again, I am really embarrassed by by the fact that Judge Payson had to go through this effort post-trial. I think it was completely unnecessary. And my regard for the court would not have permitted me to do anything intentionally as an as a as a matter of law. Have you been sanctioned before? I'm not, Your Honor. And this is this is very is very surprising to me in this context that I've been sanctioned. I was sanctioned by another judge in Western District well after this case regarding a very protracted document discovery issue that involved 10 years of discovery of personnel records during the pendency of the litigation regarding whether 50A would apply. So that was very contentious and we are complying with that order. The judge has ultimately ruled what he would what he will do with this. But the nature of these cases, Your Honor, is, you know, we deal with personnel issues regarding police officers. Let's not get away from this case and the sanctioned fear. I appreciate that mistakes can be made easily over the course of the trial. And with respect to the first showing of the medical record that had the prison notation on it, it's perfectly reasonable. It shouldn't have happened, should have been redacted. But it's reasonable to say, well, sorry, I missed that. The very next day after that was pointed out, the same exhibit was displayed to the jury without the redaction having been made. What what explains that? How can that be inadvertent? If the judge sort of yells at you and says, hey, you should have redacted that. Don't show that to the jury. Get it off the screen. And then the next day you come back with the same document unredacted. And that was an embarrassment, Your Honor. I just want to kind of lay the groundwork here. There were at the time that I was presenting on cross examination against an expert witness. There were numerous reports that were on the table, dozens of them that I was pulling from. This particular offensive note, Your Honor, is in about six size font at the side ledger. And the main body of the document references very relevant notes that do not defy the judge's order. And in setting my notes aside, I was lead chair. I was the only person from my office representing my clients. And I had four clients, hundreds of documents. As I put that document to the side at the end of each day or at the end of each break session, I would put kind of get all my documents together and try to scuttle back and forth to my office or to the break room. And the document inadvertently, because of the small size and the fact that it was on a side ledger, got mixed in. I'm focusing on the main body of the document. And embarrassingly, I put that document back on. And I will tell you this. And I'm not saying this is a form of flattery. I really honor Judge Payson. I honor the work that she does. And I was horrified that that happened. I don't think the jury saw it. It was on the projector for less than two seconds. But it was it was an embarrassing moment. I was referencing you. You also asked questions where you referenced incarceration. No. So you referenced twice incarceration during your questions. So. So what happened, Your Honor, was Nina War had previously testimony was elicited from her asking about how many times Mr. War had been arrested. So I misinterpreted that and said, you previously testified that Mr. War has gone to jail. Objection, Your Honor. Arrested, not jail. So that was again, that was a mistake. But again, Your Honor, I'm dealing with four clients. I'm dealing with seven. But, you know, we're the law requires a deference to the judge in terms of what the effect was on the jury. But she also was in the courtroom when you were doing these things. And she came to the clear conclusion that these weren't like inadvertent things you were doing. She said she found that your explanations and responses to the court's repeated admonishments and the pending sanctions motion reveal Asha's strong disagreement with the court's rulings. And while disagreement is certainly permissible, vowing the rulings and then seeking refuge in that disagreement is not. She came to the conclusion that this wasn't like carelessness, that you disagree with the rulings and that you were doing everything you could to undermine them. That's what what she found. I wasn't there. I hear what you're saying. But this was intentional. Right. Right. Well, Judge, Judge Bianco, I have not appealed the judge's ruling because I respect her interpretation, her ruling and her work in this case. I respectfully disagree with her assessment that my action was intentional. I have practiced for 16 years and nothing like this has ever happened. I have the trust of my colleagues. I represent police officers and first responders. This is a first for me. This was the biggest case our office has tried in the last 30 years. Again, I tried it by myself. And in the ebb and flow of litigation, I did make some mistakes and I own those. And again, I am personally very embarrassed that I made any of these mistakes. And it was truly a learning experience. But the judge rightly pointed out that these mistakes did not affect the overall character of a two week trial with 17 witnesses and thousands of pages of documents. I would say I much appreciate your tone here today. But I was moved as some of my colleagues have been to ask questions about your behavior, in part by the brief that you filed in this court, which seemed to continue the kind of combative, defensive lack of recognition of any problem that was was somewhat concerning to me. And I noted that yours was the only name that appeared on the brief. Did anyone else participate in the drafting of the brief or review it before it was filed? Your Honor, I have owned the case since 2013. So my colleagues gave me the space to write the brief. I will say, Your Honor, I agree with you that there is a an aggressive tone to the brief because, again, I have been made center partly by my own mistakes, but partly by Mr. Berkowitz focusing me as, you know, sort of the reason, the bane of these cases. Well, yeah, but I understand the need to the difficulty of defending oneself personally. Sure. I understand that problem. At the same time, it is not every day, to say the least, that we have before us a case in which a representative of a government agency, a lawyer for a government agency, has been personally sanctioned by a judge. And it would seem to me that it would behoove an office that is aware of that to take some interest in how the case is then defended on appeal. You know, I've been in government offices. I've supervised lawyers, including very experienced ones. And when something like this happened at a trial and then there was going to be an appeal, of course, that those facts are going to be central to the appeal and how that behavior is defended or apologized for or presented in a brief. It was always a matter of prime concern for the office. So I just can't help but caution you and to some degree the office that you represent about the way in which matters like this should be briefed. And it certainly sounds to me as if in between the writing of the brief and today, you have reflected on this and decided to take a different approach. That is very welcome. And, you know, I don't think you're a bad person. It's not about you, but it's about it's about what the the way in which cases need to be presented in court, both at trial and on appeal. So I was concerned along those lines. I mean, I've been at this work, you know, now for twenty five years. And I was a district of federal district court judge before I sit where I sat. And we see these of ninety three cases, you know, not with some with with some frequency. And I've got to say, I just have never seen a record of a trial in in this circuit that reflects what I saw when I was reading these briefs and studying the record. I mean, it was just it was mayhem. It was just, in some respects, a free for all. This is not who we are. This is not what what the traditions of the circuit and the federal courts are all about. Well, your honor, I respect the the opinions and the positions of the court. And I'm not here sort of with with with torn feathers on to to try to defend myself. But I do want to say and I think it's important for the record to say that I think I commend personally, I've been involved in a lot of trials in state court and federal court. I commend the job that Judge Payson did. It was I respectfully disagree. Judge Parker, it was not mayhem. It was very well organized and very well run. There were a lot of moving parts. There was a gallery full of dozens and dozens of people. There were a lot of considerations to make with respect to my with respect to my office. We have worked very, very closely together on this case in a collaborative way for seven years. This case represents half of my legal career. And my office trusted me to represent four clients in one of the most highly publicized cases in the region in decades. And I did my very best. I fell short on some aspects. I'm embarrassed by that. I've apologized to the court. Judge Payson was worthy of that apology. But I do think the trial was well run. And I think the jury verdict should be upheld. They work very hard and they work for weeks. Fair enough. Thank you. Thank you. All right. Thank you, Mr. Ash. Mr. Berkwood, you have three minutes in rebuttal. Mr. Berkwood, you're on mute. I apologize, Your Honor. With regard to Mr. Ash's argument, he he referenced the aggressive tone of his brief. Well, it was an aggressive tone at the trial as well. I think his brief is very reflective of how he acted during the trial itself. The trial was complete mayhem. OK, I've never had a trial like that. The only other trial I had was on the duty versus Gottschall case where the judge did disqualify the defense attorney from retrying the case at the retrial. So Judge Payson, it's my position that Judge Payson could not keep control over the demeanor of the trial due to Mr. Ash's misconduct. Something that crossed my mind as I was reading the papers. If it was it was complete mayhem and Judge Payson lost complete control of the trial. Why is your the remedy you're seeking so narrow? You're not asking for a new trial altogether. You just want the damages to be reassessed on Mr. Libertor. If the trial got so out of control, why is your remedy so narrow? Well, because we have a liability verdict against Officer Libertor, and he's the one who decided to push the wheelchair over, which caused Mr. And he's the one that delivered the elbow strike to his head. Instead of retrying the entire case over again, we felt it would be easier just to limit it to a trial on the issue of damages. But your honor, you know, whatever remedy you fashion is what remedy you fashion. I wasn't suggesting we're going to fashion different remedy by just I felt that remedy. I was scratching my head a little bit. If this trial is so unfair, you could you could try to preserve that portion of their verdict. But say you want a trial. You could have said we want a trial for the other parts, too, because we disinfected everything. It's kind of I'm trying to figure out how it infected just the damages part of the case. If it was that, you know, material in terms of its influence on the jury, everything was impacted, your honor. And to be honest with you, whatever remedy this court fashions, we will go with that remedy. OK, I wanted to try to preserve the liability verdict that we had against Officer Libertor. I wanted to preserve that along with the punitive damages finding where the jury awarded zero dollars. I wanted to preserve that that punitive damages. I certainly understand why you want to do that, but that's somewhat problematic. Right. I mean, you say the jury verdict was contradictory insofar as it found punitive damages appropriate, but did not award any actual money as punitive damages. Therefore, half of that gets the half that favors you get preserved and the half that doesn't gets overturned. And it's not going to be easier. Right. And because if you're going to retry punitive damages, you're going to have the trial is going to have to be the same trial. Would it be because you have to show all the conduct for the jury to assess how bad it was? It's not just a question of we'll just bring in the doctors now for damages. The punitive damages part will require a retrial of the entire case. Yes, your honor. And if this court does grant a new trial on all issues concerning liability and damages, we'll gladly take that. But bottom line here is Benny War and nine or they were deprived of a remedy. Benny War was deprived of a remedy for violation of the civil rights. We know that it was, you know, he didn't get a fair shake of justice here. He needs to have that fair shake. Just asking that you give that to him. Can I ask you one question on this issue of the reference to incarceration? Didn't pursuant to the judge's ruling, wasn't it admissible and wasn't there testimony that your client had a felony for driving with a suspended license? I think had been arrested four or five times. That was already out there, independent of this issue about whether or not he actually was physically in jail at some point. Right. So the judge ruled that only Mr. War's conviction for aggravated unlicensed operation of a motor vehicle could come into play. I know, but that's just correct. I think his wife said he's been arrested four or five times. Yeah, the judge allowed evidence of him being arrested, but she prohibited any reference to him being incarcerated. In other words, my point is, how much additional prejudice would there be if someone was arrested for five times with a jury? Would there be an implication that he may have spent some undefined time in jail for one or more of those four or five arrests? I don't think that would be shocking. The jury might infer that on their own. So we have to measure the impact of that overall, even though he was wrong. But we still have to measure, like, did that really make a difference when he was arrested four or five times and had a felony? Obviously, I think it did. I think I think everything that was allowed in here painted a picture of any war is a criminal unworthy of compensation. Cumulatively, yes, there was too much prejudice and damage done for Mr. War to get a fair trial. All right. All right. Thank you, Mr. Berkley. Thank you, Mr. Esch. We'll reserve the decision. Have a good day. Thank you. Thank you so much.